**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**MADELAINE DURAND,** *et al.*,

            Plaintiffs,

            v.                                                    Case No. 20-cv-338 (CRC)

**DEBRA HAALAND,**[1] *et al.*,

            Defendants.

---

**MEMORANDUM OPINION**

The plaintiffs filed this action under the Administrative Procedure Act ("APA") against

the Secretary of the Interior, the Department of the Interior, and two components of the

Department—the Bureau of Land Management ("BLM") and the Interior Board of Land Appeals

("IBLA")—seeking review of an agency decision relating to their mining rights.  Specifically,

the plaintiffs challenge as arbitrary, capricious, and contrary to law a BLM decision closing a

group of their mining claims in Lassen County, California.  In an administrative appeal, the

IBLA affirmed the BLM decision, reasoning that it properly rested on a 1999 California state

court judgment conclusively determining that the plaintiffs' asserted mining claims were invalid.

The parties have filed cross motions for summary judgment, seeking review of the

IBLA's decision.  Agreeing with the IBLA that the state court judgment provided a valid basis

for the BLM's decision, the Court denies the plaintiffs' motion and grants the defendants' cross

motion.

---

[1]  The plaintiffs' complaint named as a defendant David Bernhardt, then the Secretary of
the Interior.  See Compl. ¶ 17.  When Debra Haaland became Secretary, she was automatically
substituted as the proper defendant.  See Fed. R. Civ. P. 25(d).

I.      **Background**

A.  Statutory Background

Designed "[t]o encourage mining in the Western United States," the General Mining Law of 1872 (the "Mining Law"), 30 U.S.C. §§ 22–54, "declared valuable mineral deposits in federal lands 'open to exploration and purchase.'"  Orion Rsrvs. Ltd. P'ship v. Salazar, 553 F.3d 697, 699 (D.C. Cir. 2009) (quoting 30 U.S.C. § 22).  Under the Mining Law, citizens may "locate" claims "to extract minerals without prior government permission and without paying royalties to the United States."  Id. (citing 30 U.S.C. § 26).  Although the law allows claimants to gain legal title through "patent[ing]" claims, they can also maintain equitable rights to "unpatented" claims indefinitely, so long as they comply with applicable laws and regulations.  Freeman v. U.S. Dep't of the Interior, 37 F. Supp. 3d 313, 319 (D.D.C. 2014).  To help keep track of the millions of unpatented mining claims on federal land, Congress in 1976 created a federal recording system, one purpose of which is "to rid federal lands of stale mining claims."  United States v. Locke, 471 U.S. 84, 87 (1985) (discussing Section 314 of the Federal Land Policy and Management Act, 43 U.S.C. § 1744).

As the Supreme Court has long recognized, the Secretary of the Interior "is granted broad plenary authority under the Mining Law over the administration of public lands, including the determination of the validity of any mining claims."  Freeman, 37 F. Supp. 3d at 329 (citing Cameron v. United States, 252 U.S. 450, 459–60 (1920)).  As an exercise of this authority, the BLM has a variety of internal processes to ensure the validity of the unpatented mining claims in its records.  See, e.g., 43 C.F.R. § 3872.1 (discussing patent application protests); 43 C.F.R. § 3872.2 (establishing applicable procedure for contests).

But where there are rival interests to the same mining claim, the Mining Law and BLM practice require that those disputes be resolved instead through separate procedures outside the agency. For instance, the statute instructs those with a competing interest in a claim undergoing the patent process to file an "adverse claim" with the BLM, and then "commence proceedings in a court of competent jurisdiction[] to determine the question of the right of possession[.]" 30 U.S.C. § 30. The BLM employs this same approach for clashes over unpatented mining claims. In both contexts, the IBLA has held that "the Department is without authority to determine the question of right of possession to claims as between rival claimants, and that a suit filed in a court of competent jurisdiction is the proper method of resolving such disputes." W. W. Allstead, 58 IBLA 46, 48 (1981).

B. Factual and Procedural History

This case concerns one of those disputes, over the validity of unpatented mining claims in Lassen County, California—referred to here as the Sierra Lady Claims. See Durand, 188 IBLA 1, 2 (2016). In April 1999, a California state court adjudicated the status of these same mining claims, which at the time were purportedly owned by plaintiffs Madelaine and Edward Durand. See id.; see also DOI-000633–48.[2] In a suit brought by a group led by Syed M. Arif, the Superior Court for the State of California, Lassen County (the "Superior Court") concluded that 28 of the Durands' 30 asserted mining claims were "of no [e]ffect and invalid," as they were situated on lands subject to previous location claims by other parties to the litigation. See DOI-000643–44; see also DOI-000639 (establishing ownership only as to two unpatented mining claims). Because it determined that those other parties—Arif and Earthco, a Nevada corporation

---

[2] "DOI" citations refer to the Department of Interior record in this action. All cited material can be found in the Joint Appendix the parties filed on this Court's docket.

and cross-defendant in that case—were the "sole owner[s]" of those claims as of April 1, 1999, see DOI-000635–39, the Superior Court declared that the Durands had "no right, title, estate, interest or lien" in the 28 Sierra Lady Claims at issue, and "permanently enjoined" the Durands from "[e]ntering upon" them, DOI-000648.

Despite this court judgment, the situation on the ground remained largely unchanged for the next decade and a half. The Durands transferred the claims as if the Superior Court judgment did not exist. For instance, in 2004, Edwin Durand transferred, via quitclaim deed, ten of the purported Sierra Lady Claims to Michael Woods, who is also a plaintiff in this case. See DOI-001022. And though the timing of any transfer is less clear, by 2015 the BLM's records also listed GEM Green Earth Minerals, Inc., an entity that appears to be closely associated with the Durands, as the owner of another eight of the Sierra Lady Claims. See DOI-000630; see also DOI-000780 (listing Madelaine Durand as president of company). During this time period, and despite the Superior Court's judgment, the Durands, Woods, and GEM Green Earth Minerals worked to maintain the Sierra Lady Claims' status with the BLM, including by paying mandatory fees and applying for needed fee waivers. See DOI-000780–81; DOI-000785–86.

Then, in 2015, an attorney representing Cal Minerals—an entity asserting rights to some of the claims at issue in the 1999 Superior Court decision—sent a copy of that court's judgment to the BLM. See DOI-000689. In response, the BLM's California State Office issued a decision declaring the Sierra Lady Claims "closed," citing the Superior Court's earlier "adjudication of

disputed ownership." DOI-000627.[3]  As part of its decision, the BLM also authorized refunds of any fees paid on closed claims after the 1999 judgment.  See id.

The Durands, Woods, and GEM Green Earth Minerals appealed the decision to the IBLA, see DOI-000537, which serves as the Department's "review authority charged with deciding, on behalf of the Secretary, matters relating to the use and disposition of public lands and their resources," Orion Rsrvs. Ltd. P'ship, 553 F.3d at 700 n.1.  In a statement of reasons, they urged the IBLA to hold that the BLM had improperly sought to enforce an expired and otherwise invalid state court judgment.  See DOI-000067–88.

The IBLA affirmed.  See Durand, 188 IBLA at 1.  The IBLA reasoned that the Superior Court's judgment was a "proper legal basis" for closing the Sierra Lady Claims because it was made "by a court of competent jurisdiction" and determined "that a claimant ha[d] no ownership interest in a mining claim."  Id. at 3.  The IBLA then rejected the claimants' arguments against the BLM's acceptance of the Superior Court's judgment.  First, it concluded that the ten-year statute of limitations for enforcement of certain judgments in the California Code of Civil Procedure did not apply to the BLM decision.  See id. at 4.  In the IBLA's view, the underlying Superior Court judgment "was in the nature of a quiet title action or declaratory judgment" recognizing the "legal rights of the parties," and so needed no "subsequent enforcement" to take legal effect.  Id. at 4–5.  Next, the IBLA took on the claimants' contention that the BLM's decision relied on an improper effort by parties to the original 1999 case to "enforce" their rights under the earlier judgment.  See DOI-000074–76.  The IBLA rejected this argument because, it

_____

[3]  The BLM initially declared closed all 30 of the Sierra Lady Claims.  See DOI-000630.  It later vacated its decision as to the two claims—Sierra Lady Nos. 164 and 165—that the Superior Court had, in 1999, held that the Durands owned outright.  See DOI-000626.

held, the BLM's closure determination was "not contingent upon any competing rights others may have . . . to the claims at issue." Durand, 188 IBLA at 5. Finally, the IBLA declined the claimants' various invitations to collaterally attack the state court judgment. See id.

The Durands, Woods, and GEM Green Earth Minerals filed suit in this Court, seeking an order vacating the IBLA and BLM decisions, compelling the BLM to reinstate the Sierra Lady Claims, and awarding reasonable costs, including attorneys' fees.[4] See Compl. at 20. Their *pro se* complaint asserts seven counts under the APA, which can be boiled down to two basic claims: that the BLM's decision was arbitrary and capricious or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), and that the decision deprived them of property rights without due process, "contrary" to their "constitutional right[s]," 5 U.S.C. § 706(2)(B). See Compl. ¶¶ 49–111. The parties filed cross motions for summary judgment, which are now ripe.[5]

## II.   Standard of Review

Summary judgment is the proper stage for determining whether, as a matter of law, an agency action complies with the APA and is supported by the administrative record. Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977). Under the APA, "[t]he reviewing court shall

---

[4] This Court struck GEM Green Earth Minerals, Inc., as a plaintiff because it is a corporation and no counsel had entered an appearance on its behalf. See Minute Order of Apr. 28, 2020; see also Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 202 (1993) (holding that corporate entities may not appear in federal court other than through a licensed attorney). The validity of its eight claims—Sierra Lady Nos. 103, 105–09, 157, and 160—are thus no longer before the Court. See DOI-000630. As a result, the Court reviews only the IBLA's decision as to the ten disputed Durand claims (Sierra Lady Nos. 101– 02, 104, 113, 116–17, 144–45, 147, and 156), as well as the ten claims Woods acquired from the Durands in 2004 (Sierra Lady Nos. 120, 123, 126, 129, 133, 136, 158–59, 161, and 166), five years after the Superior Court's judgment invalidating them. See id.

[5] Before a briefing schedule was set, the plaintiffs filed an initial motion for summary judgment, see ECF No. 17, which the Court now denies as moot.

. . . hold unlawful and set aside agency action, findings, and conclusions found to be . . .

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.

§ 706(2)(A).  The APA also instructs courts to set aside agency action "contrary to constitutional

right."  5 U.S.C. § 706(2)(B).  As the Supreme Court has explained, "[t]he scope of review under

the 'arbitrary and capricious' standard is narrow," and precludes the Court from "substitut[ing]

its judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.

Auto. Ins. Co., 463 U.S. 29, 43 (1983).  Rather, the Court must "uphold the IBLA's

determinations so long as the Board engaged in reasoned decisionmaking and its decision is

adequately explained and supported by the record."  Orion Rsrvs. Ltd. P'ship, 553 F.3d at 703–

04 (internal quotation marks omitted).  Even if the agency did not fully explain its decision, the

Court may uphold it "if the agency's path may reasonably be discerned."  Bowman Transp., Inc.

v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).  The Court's review is limited to

the administrative record, EarthReports, Inc. v. FERC, 828 F.3d 949, 959 (D.C. Cir. 2016), and

the party challenging an agency's action bears the burden of proof, City of Olmsted Falls v.

FAA, 292 F.3d 261, 271 (D.C. Cir. 2002).

## III.  Analysis

### A.  Arbitrary and Capricious Claims

In support of their summary judgment motion, the plaintiffs offer several reasons why, in

their view, the IBLA's decision affirming the closure of the Sierra Lady Claims was arbitrary

and capricious or otherwise not in accordance with the law, in violation of 5 U.S.C. § 706(2)(A).

See Pls.' Mem. in Supp. of Mot. Summ. J. ("Pls.' Mem.") at 7–32.  From their *pro se* briefing,

the Court discerns four distinct arbitrary and capricious challenges to the IBLA's decision:  *First*,

the plaintiffs argue that either the California or federal statute of limitations barred the BLM

from enforcing the Superior Court's judgment. *Second*, they contend that the BLM improperly relied on an uncertified copy of the Superior Court's judgment, provided to it by Cal Minerals. *Third*, they claim Arif and Earthco—the parties deemed to own the Sierra Lady Claims in 1999—never took needed steps to enforce the Superior Court judgment, precluding both them and the BLM from doing so now. *Fourth*, they mount a variety of collateral attacks on the Superior Court's judgment, which they say render it unenforceable. As explained below, the Court is not convinced by any of these arguments.

### 1. *Statutes of Limitations Challenges*

The plaintiffs' primary objection to the closure of their mining claims is that the ten-year California statute of limitations for the enforcement of judgments "for possession . . . of property," Cal. Civ. Proc. Code § 683.020, precluded the BLM's "enforcement" of the Superior Court's 1999 decision. See Pls.' Mem. at 8. Alternatively, they claim that the five-year federal statute of limitations for forfeiture actions, 28 U.S.C. § 2462, barred the BLM's determination. See id. at 27–28. The defendants respond that the "decision to declare the Sierra Lady Claims closed" was not "an enforcement action" barred by any statute of limitations. See Defs.' Mem. in Supp. of Cross-Mot. Summ. J. ("Defs.' Mem.") at 7, 9. Because the plaintiffs' contention rests on a fundamental misunderstanding of both the Superior Court's judgment and the BLM actions at issue, the Court concludes that the agency has the better of this argument.

By its terms, the Superior Court's 1999 judgment had legal force. In its order, the Superior Court declared that the Durands "possess[ed] no right, title, estate, interest or lien, whatsoever" in the Sierra Lady Claims, and further "permanently enjoined and restrained" them from entering on the real property or mining claims determined to belong to other parties to the case. See DOI-000648. With that plain language, the judgment took immediate legal effect—

8

declaring the Durands' rights void and enjoining them from violating the rights of others—

without any subsequent enforcement or forfeiture action by the prevailing parties or the agency.[6]

And under well-established BLM procedures, the agency was bound to treat the state

court's conclusion as the definitive legal determination of the status of the Sierra Lady Claims.

As the agency has explained, the BLM is "not the forum for the resolution of private party

dispute between rival claimants."  Bureau Land Mgmt., Manual H-3830-1, *Administration of*

*Mining Claims, Mill Sites, and Tunnel Sites*, at III-2 (2015), https://www.blm.gov/sites/blm.gov/

files/uploads/Media_Library_BLM_Policy_H%203830_1.pdf.  Instead, the proper venue for

such a dispute is a court of competent jurisdiction, whose "findings . . . on the right of possession

are binding on parties to the lawsuit."  LaRue Burch, 134 IBLA 329, 332–33 (1996).  The

applicable law, too, makes such findings binding on the agency.  "As the Supreme Court

explained . . . a century ago, 'no right arises from an invalid claim of any kind.'"  Freeman, 37 F.

Supp. 3d at 319 (quoting Cameron, 252 U.S. at 460).  Instead, following an adjudication of rival

claims, "[t]he Department is bound not to recognize the claim of the unsuccessful litigant."  W.

W. Allstead, 58 IBLA at 48.  As a result, the decision here—the BLM's notice canceling the

Sierra Lady Claims—was neither an enforcement nor forfeiture action, but rather a recognition

of a change in legal status already in existence.

---

[6] The plaintiffs' briefing discusses Williams v. Spence, 296 P.2d 577 (Cal. Ct. App. 1956), a California case the IBLA cited for the proposition that declaratory judgments do not need to be enforced.  See Durand, 188 IBLA at 4–5; Pls.' Mem. at 18–20.  The Court agrees with the plaintiffs that Williams does not support the IBLA's point.  There, a California appellate court held that a lower court's judgment was merely a declaration of rights as to a third-party defendant, and so could not be enforced as a money judgment against it.  See Williams, 296 P.2d at 580.  But whether a given judgment *can* be enforced and whether it *must* be enforced are, of course, different questions.  Still, the Court does not find this error fatal because, as explained above, it is clear that the California court judgment here took immediate effect in all relevant respects.

The Court is not moved by any of the plaintiffs' arguments to the contrary, which center on the facts on the ground as well as various laws governing filings with the BLM.  As to the facts, the plaintiffs claim that the Superior Court judgment must not have been effective when issued because "the Sierra Lady Claims remained open and undisturbed until 2015."  Pls.' Mem. at 17.  They maintain, too, that the BLM continued to "recognize" the claims by accepting fees and allowing the filing of required documents.  Id. at 14.  But all this history indicates is that the Durands may have been in violation of the Superior Court's injunction for more than a decade following its issuance.  And by law, the BLM's acceptance of fees and filings indicates nothing about the validity of the underlying claims.  See 43 U.S.C. § 1744(d) (noting that recording does not "render valid" any "otherwise" invalid claim); 43 C.F.R. § 3830.22(b)(2) (allowing refunds of fees on claims later determined to be "void" when paid).  In line with its ordinary practice, the BLM here authorized the refund of fees the plaintiffs paid after 1999, see DOI-000627— indicating the underlying claims were void following the Superior Court's judgment.

The Court is likewise unpersuaded by the statutes and regulations the plaintiffs cite for the proposition that the Superior Court's judgment lacked legal effect upon entry, prior to "enforcement" by the BLM.  They point first to 30 U.S.C. § 30, the section of the Mining Law governing procedures for adverse claims during the patenting process.  See Pls.' Mem. at 12–13.  As an initial matter, because this section only governs contests over claims with a live patenting application, see 30 U.S.C. § 29, it does not apply to the dispute over unpatented claims here.  And even if it did apply, this statute only instructs that a prevailing party in such a case "may . . . file a certified copy of the judgment" with the BLM to have a patent issued.  See 30 U.S.C. § 30.  The law is silent on what would happen if a prevailing party fails to make that filing.  And it

nowhere suggests that a loser's invalidated claims—like the Durands' following the Superior Court judgment—are somehow revived should the winner never file.

The same logic applies to the other provisions the plaintiffs cite, each of which likewise governs only what holders of concededly valid mining claims should do to maintain their status with the BLM.  See, e.g., 43 U.S.C. § 1744(b) (requiring mining claimants to file "a copy of the official record" of the location with the BLM); 43 C.F.R. § 3833.32(b) (requiring transferees to file notice of transfer with BLM state office).  Once again, these recording regimes do not indicate that a claimant's failure to make the necessary filing would resuscitate the claims of some other applicant.  In fact, each provision makes clear that the act of filing with the BLM has no effect on the underlying validity of any claim.  See 43 U.S.C. § 1744(d) (explaining that recordation "shall not render valid any claim which would not be otherwise valid under applicable law"); 43 C.F.R. § 3833.1(b) (noting that "filing any . . . documents with BLM . . . does not make a claim or site valid if it [is] not otherwise valid under applicable law").  The Court therefore agrees with the defendants that the BLM's action here was not an enforcement or forfeiture action, but instead "simply *recognize[d]* the legal effect of the previously-entered judgment."  Defs.' Mem. at 9 (emphasis in original).[7]

_____

[7]  The parties extensively debate the applicability of the IBLA's decision in Recon Mining Co., Inc., 167 IBLA 103 (2005), which the BLM cited in its IBLA briefing as an example of a case with a years-long gap between a state court judgment and a BLM decision closing claims, see DOI-000034.  See Pls.' Mem. at 22–25; Defs.' Mem. at 10.  The plaintiffs believe the BLM misread the procedural history of that case, and that there was no such time lag. See Pls.' Mem. at 24.  The Court need not resolve this dispute.  In its briefing before the IBLA, the BLM cited Recon Mining only as an example of its past practice, not for any legal proposition regarding its authority.  And in the decision the Court reviews here, the IBLA relied on that case only for a rule no party contests:  that the Department has no authority to mediate disputes between rival claimants.  See Durand, 188 IBLA at 3, 5 (citing Recon Mining, 167 IBLA at 109).

Because the BLM's decision was neither an enforcement nor forfeiture action, the Court

agrees with the IBLA that it was not subject to either the California or federal limitations period.[8]

> 2. *Challenge to the Use of an Uncertified Copy of the Superior Court Judgment*

The plaintiffs next say that the BLM's closure decision improperly relied on an

uncertified copy of the Superior Court's judgment submitted by Cal Minerals.  See Pls.' Mem. at

11–13.  In support, they point again to 30 U.S.C. § 30, which instructs prevailing parties in

adverse proceedings over patenting applications that they "may . . . file a certified copy" of the

court judgment with the BLM.  Largely for reasons already covered, the Court concludes that

this statute does not mandate that the BLM rely only on certified copies of state court judgments.

See supra § III.A.1.  First, the statute applies only to adverse proceedings over claims undergoing

patenting, which is not the type of decision under review here.  Second, as the defendants rightly

note, see Defs.' Mem. at 11, the plain language of this statute indicates that it creates a

permissive, rather than mandatory, process for the filing of certified judgments.  See Baptist

Mem'l Hosp. v. Sebelius, 603 F.3d 57, 63 (D.C. Cir. 2010) ("'[M]ay' is permissive rather than

obligatory.").  Finally, this provision only instructs *prevailing* parties on the form of judgment

they should use when seeking to validate a claim; it does not limit what the *agency* may rely on

in its own recordkeeping.  A rule stating that a "certified copy" of a judgment "shall . . . be

conclusive," Wolverton v. Nichols, 119 U.S. 485, 489 (1886), does not imply that an uncertified

copy of a judgment cannot likewise be found reliable.

---

[8]  For that reason, the Court does not address the plaintiffs' discussion of whether the
state statute of limitations would apply under Guaranty Trust Co. v. United States, 304 U.S. 126
(1938).  See Pls.' Mem. at 10–11.

In any event, the Court agrees with the defendants that any error on this point is harmless. See Defs.' Mem. at 13.  "In administrative law, as in federal civil and criminal litigation, there is a harmless error rule:  § 706 of the Administrative Procedure Act, 5 U.S.C. § 706, instructs reviewing courts to take 'due account . . . of the rule of prejudicial error.'"  PDK Lab'ys Inc. v. U.S. Drug Enf't Agency, 362 F.3d 786, 799 (D.C. Cir. 2004) (alteration in original).  The plaintiffs have never claimed that the copy of the judgment provided by Cal Minerals inaccurately reflects the decision of the Superior Court.  The IBLA's reliance on an uncertified copy of that judgment therefore could not have "affect[ed] the outcome" of its determination, so vacating its decision on that grounds would be "senseless."  See id.

### 3.   Challenge to Enforcement by Superior Court Counterparties

The plaintiffs also suggest that the IBLA's decision is arbitrary and capricious because it improperly "enforces" the Superior Court's judgment on behalf of Arif and Earthco—the parties that court determined to have valid claims in 1999.  See Pls.' Mem. at 25, 27.  The plaintiffs point out that "Arif and Earthco never filed the 1999 Judgment with the BLM to have the BLM enforce it," and claim that they no longer have standing to enforce the injunction since their claims lapsed.  See id.  But as the Court has already held, the BLM decision at issue in this case did not "enforce" the Superior Court's earlier judgment.  See supra § III.A.1.  Rather, that judgment declared the plaintiffs' claims void, and the BLM was required by law to accept that declaration as fact.  See W. W. Allstead, 58 IBLA at 48.  So even if the plaintiffs are right that the parties to the 1999 judgment are no longer in good standing with the BLM, their ability to enforce that court order or validate their own claims is irrelevant.  To hold otherwise would require the BLM to recognize a set of claims a court of competent jurisdiction has already held

invalid, contrary to its responsibilities under the Mining Law.  See Cameron, 252 U.S. at 460

(explaining that the Secretary is "charged with seeing" that "invalid" claims are "eliminated").

### 4. Collateral Attacks on the Superior Court's Judgment

Finally, the plaintiffs raise several objections to the "enforcement" of the 1999 Superior

Court Judgment related to that court's jurisdiction or the propriety of its injunction.  See Pls.'

Mem. at 26–27.  As the Court has already explained, the BLM's cancelation of the Sierra Lady

Claims here did not constitute an enforcement of the Superior Court's injunction.  See supra

§ III.A.1.  But even if it did, this proceeding is not an appropriate forum to make such collateral

attacks on the California court's judgment.  The Rooker-Feldman doctrine precludes federal

district courts, like this one, "from exercising jurisdiction in an APA action where the action

'amount[s] to the functional equivalent of an appeal from a state court.'"  El Rio Santa Cruz

Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs., 396 F.3d 1265, 1275

(D.C. Cir. 2005) (quoting Gray v. Poole, 275 F.3d 1113, 1119 (D.C. Cir. 2002)).  Because the

purported errors that the plaintiffs point to in the Superior Court's judgment all could have been

raised on direct appeal, that was the proper avenue for the parties to state their objections.  See

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (explaining that the

doctrine precludes adjudication of "cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments").  Because the plaintiffs did not

do so in 1999, the Court declines to entertain these arguments here.

### B. Constitutional Claim

The final count of the plaintiffs' complaint alleges that the BLM's decision was

"[c]ontrary to [a] constitutional right" because it deprived them "of their valuable rights to the

Sierra Lady Mining claims without due process of law."  Compl. ¶ 111; <u>see also</u> 5 U.S.C.
§ 706(2)(B) (instructing courts to set aside agency action that violates a constitutional right).
The Court understands the plaintiffs' claim to allege a violation of the Fifth Amendment's due
process clause, although the exact contours of this claim are less than clear.[9]

None of the plaintiffs' due process objections to the BLM's decision hold water.  In their
summary judgment briefing, the plaintiffs' discussion of this claim merely reiterates their earlier
contention that the BLM's closure was prohibited by the California or federal statute of
limitations.  <u>See</u> Pls.' Mem. at 28–29; Pls.' Reply and Opp'n Mem. at 15.  This argument fails
because, as the Court has already held, no applicable statute of limitations barred the agency
action under review.  <u>See</u> <u>supra</u> § III.A.1.  In their complaint, the plaintiffs separately suggest
that the BLM's failure to respond to a 2018 letter regarding the claims' closure violated their due
process rights.  <u>See</u> Compl. ¶ 110.  But the administrative action under review here concluded
years before any 2018 letter:  The BLM decision in 2015, and the IBLA affirmance in 2016.  <u>See</u>
<u>Durand</u>, 188 IBLA at 1; DOI-000626.  And in those proceedings, the Department offered the
claimants an opportunity to fully brief any objections to the BLM's closure decision.  Because
the plaintiffs have not identified any shortcoming in those procedures, any remaining due process
claim fails.  <u>See</u> <u>Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec</u>., 980 F.3d 109, 120
(D.C. Cir. 2020) (noting that due process claimants must "identify the process that is due").

---

[9]  The defendants speculate that the plaintiffs may instead be raising a takings claim.  <u>See</u>
Defs.' Mem. at 13–14.  Given the complaint's emphasis on "due process of law," Compl. ¶ 111,
the Court does not discern any takings claim from these allegations.

## IV.  Conclusion

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Summary Judgment, grant Defendants' Cross-Motion for Summary Judgment, and dismiss the complaint and case.  A separate Order will follow.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  September 15, 2021